RENS, Appellant, vs. NORTHWESTERN MUTUAL RELIEF ASSO-
CIATION, Respondent.

*May 26 — June 23, 1898.*

*Life insurance: Suicide: Court and jury: Evidence: Declarations show-
ing intention.*

1. In an action on a policy of life insurance which did not cover death
by suicide, whether voluntary or involuntary, sane or insane, there
was evidence, among other things, that the deceased frequently
became intoxicated, quarreled with his wife, and then threatened
to kill himself; that on one such occasion he attempted to cut his
throat, and on the same evening said to his mother "Good-by for
the last time;" that the next day he attempted to borrow a rifle
and a revolver to shoot rats, but finally purchased a revolver and
ammunition and took them to his room, saying to another occu-
pant of the building that he "had a weapon and would never see
another sunrise;" that he resisted an attempt to take the revolver
away, and went into the dining room alone; that shortly after-
wards a shot was heard, and the deceased was found lying on the
floor, with a bullet hole through his head, entering above the right
ear and coming out back of the left ear; and that there were no
marks of burnt powder, and the flesh around the hole was not
burned or broken. *Held,* that a verdict for defendant was prop-
erly directed, the only reasonable inference which could be drawn
being that the deceased took his own life.
2. In such a case evidence of the declarations of the deceased within
the twenty-four hours preceding his death, tending to show an in-
tention to commit suicide, was properly admitted.

APPEAL from a judgment of the circuit court for Marathon
county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed.*

This is an action by the plaintiff, as payee of a life insur-
ance policy upon the life of her husband, who died April 2,
1896, from the effects of a pistol shot. The defense was sui-
cide. The policy contained a provision to the effect that
suicide, whether voluntary or involuntary, sane or insane,
was not a risk assumed by the defendant.

The evidence showed that the deceased had been married

to the plaintiff four or five years, and frequently became in-
toxicated, and, when in such condition, would have trouble
with the plaintiff and threaten to kill himself; that he was
intoxicated during the day prior to his death, and that the
night before his death he attempted to cut his throat; that
on the same evening he said to his mother, " Good-by for the
last time; " that upon the following day, being the day of his
death, he tried to borrow a rifle, but failed, and in the after-
noon attempted to borrow a revolver for the purpose of
shooting rats.   Later he purchased a self-cocking revolver
with ammunition, and took it to the rooms where he lived,
saying to another occupant of the building that he "had a
weapon and would never see another sunrise."   His father
was then sent for, and several other neighbors came, and the
deceased had the revolver in one hand, flourishing it in the
air, and swinging his arms.   He resisted an attempt to take
the revolver away from him, and went into the dining room
alone; and shortly afterwards a shot was heard, and, upon
going into the room, the deceased was found lying upon the
floor, the revolver close to him, and cartridges scattered over
the floor.   There was a bullet hole through the head, enter-
ing over the right ear and coming out back of the left ear.
There were no marks of burnt powder, nor was the flesh
burned or broken around the bullet hole.   The plaintiff ob-
jected to the evidence showing threats of the deceased to
commit suicide, and also his other statements during the
twenty-four hours prior to his death, but the evidence was
received.

Upon this testimony the court directed a verdict in favor
of the defendant, and from judgment upon such verdict the
plaintiff appeals.

For the appellant there was a brief by *Mylrea, Marchetti
& Bird,* and oral argument by *C. B. Bird.*   To the point
that the question whether the deceased committed suicide
was for the jury, they cited *Home Benefit Asso. v. Sargent,*

142 U. S. 691; *Keels v. Mut. R. F. L. Asso.* 29 Fed. Rep. 198; *Conn. Mut. L. Ins. Co. v. Mc Whirter,* 73 id. 444; *Whitlatch v. Fidelity & C. Co.* 149 N. Y. 45, 51; *Ins. Co. v. Bennett,* 90 Tenn. 256; *Bachmeyer v. Mut. R. F. L. Asso.* 82 Wis. 255; *S. C.* 87 id. 325; *Cronkhite v. Travelers' Ins. Co.* 75 id. 116; *Mallory v. Travelers' Ins. Co.* 47 N. Y. 52; *Conn. Mut. L. Ins. Co. v. Akens,* 150 U. S. 468.

*Frank E. Parkinson,* for the respondent, argued, among other things, that the declarations of the deceased were admissible. *Ins. Co. v. Mosley,* 8 Wall. 397; *Wiggins v. People,* 93 U. S. 465; *Blackburn v. State,* 23 Ohio St. 146; *Conn. Mut. L. Ins. Co. v. Mc Whirter,* 73 Fed. Rep. 444; *Globe Acc. Ins. Co. v. Gerisch,* 61 Ill. App. 140; *Hale v. Life I. & I. Co.* 65 Minn. 548; *Comm. v. Trefethen,* 157 Mass. 180; 1 Greenl. Ev. §§ 108, 109, 111, 114; Taylor, Ev. 375–380; 1 Phillips, Ev. 194; *Mut. L. Ins. Co. v. Hillman,* 145 U. S. 285; *Smith v. Nat. Ben. Soc.* 123 N. Y. 85; *Woodward v. Sullivan,* 152 Mass. 470; *Friend v. Burleigh,* 74 N. W. Rep. 50; Bliss, Ins. 592, 593; *French v. State,* 93 Wis. 325; *Jumpertz v. People,* 21 Ill. 375; *Worth v. C., M. & St. P. R. Co.* 51 Fed. Rep. 171; Wharton, Crim. Ev. (8th ed.), § 756.

WINSLOW, J.   We think the verdict was rightly directed. From the evidence given on the trial but one reasonable inference could be drawn, and that was that the deceased took his own life.   Any other conclusion from the facts in evidence would amount to a pitiable stultification of the reasoning powers.

The evidence of the declarations of the deceased within the twenty-four hours preceding his death, tending to show an intention to commit suicide, was properly admitted.   The question was as to the intention of Rens in firing the shot, and, when such is the question, declarations of the party which are so close in point of time to the act as to justify a reasonable probability that he carried his declared intention

into execution are admissible as original evidence, provided they are made under circumstances precluding the idea of misrepresentation or bad faith.   *Hale v. Life I. & I. Co.* 65 Minn. 548.   The evidence seemed clearly to show that the deceased commenced to prepare for suicide on the day before his death, and all his remarks and acts are so closely connected with the final tragedy as to form really parts of the same transaction.

*By the Court.*— Judgment affirmed.

BARDEEN, J., took no part.